**PEOPLE ex rel. FELLOWS v. EARLY, Town Sup'r, et al.**

(Supreme Court, Appellate Division, Third Department. June 29, 1905.)

1. HIGHWAYS—REPAIRS—STATUTES.
    Highway Law, § 10 (Laws 1890, p. 1179, c. 568), provides that, if any highway or bridge be damaged or destroyed, the commissioner of highways may cause the same to be immediately repaired or rebuilt, if consented to by the town board. *Held*, that the town board is not called upon to act in case of an emergency, such as is provided for by the statute, until a request has been made by the highway commissioner.

2. MANDAMUS—WHEN GRANTED.
    Mandamus will·not lie to compel the town board to give its consent to a contract proposed by the highway commissioner.

3. SAME.
    It is no reason for refusing a proper peremptory writ of mandamus that the alternative writ asks too much, or includes an unnecessary party.

4. SAME—REPAIR OF BRIDGE.

    A highway commissioner cannot be compelled to incur expenses in repairing a bridge where there are no funds available for such purpose.

Appeal from Trial Term, Columbia County.

Mandamus by the people, on the relation of Frank Fellows, against Cormack A. Early, as supervisor of the town of New Lebanon, in Columbia county, and the town board and commissioner of highways, to compel the building of a bridge. From a judgment dismissing relator's application, he appeals. Affirmed.

The relator seeks by mandamus to compel the town board of the town of New Lebanon and the highway commissioner of said town to build a bridge over Kinderhook creek upon what is claimed to be a highway running north from the Columbia and Rensselaer turnpike. The original writ required the respondents either to immediately rebuild said bridge, or to show cause thereafter why a peremptory writ of mandamus should not issue compelling the same. Upon the return of this writ the defendants put in issue certain allegations of the petition, and, among others, the allegation that the road was a public highway. The issues formed upon such alternate writ were referred to a referee to hear and determine. The referee so appointed duly made his report, by which he found that for some years prior to 1869 there was a road leading from the Columbia and Rensselaer turnpike in the town of New Lebanon, near the village or Hamlet of West Lebanon, to and across the Kinderhook creek, with a bridge across the creek used by the owners of adjacent lands to reach their land lying north of said creek; that said bridge was rebuilt by the town of New Lebanon in the summer of 1880, and has since that time and until said bridge was again carried away, on or about January 21, 1901, been kept in repair by said town of New Lebanon; that at different times from 1880 to 1898 the road in question has been worked by the different pathmasters of said town, and kept in repair by them by plowing and scraping and by the town scraper; that for more than 30 years the said road, about 2 rods in width and about 100 rods in length, has been used by the public generally in traveling from the turnpike to the depot at the northerly end thereof, and in carrying freight, passengers, and mails to and from said depot; that since January 26, 1901, no appropriation has been made by the town for the rebuilding of the bridge, the cost of which rebuilding would be about the sum of $600; that the said road has never been laid out or recorded as one of the highways of the town of New Lebanon; that since the carrying away of said bridge in 1901 no demand has been made by the commissioner of highways of said town for the consent of the board of said town to rebuild the bridge in question, and that said board had never consented to the rebuilding or repairing of the bridge in question; that in August, 1903, certain residents of said town caused to be served upon the supervisor, town clerk, commissioner of highways, and the justices of the peace of said town of New Lebanon a demand in writing that said town immediately rebuild or replace the bridge in question. As conclusions of law the referee found that for more than 20 years, and prior to 1901, the said road had been used as a public highway and the bridge as a highway bridge, and that the said road was still a public highway in the town of New Lebanon. He further finds that the said town board of New Lebanon cannot be compelled by mandamus to consent to the rebuilding and replacing of said bridge, and that the commissioner of highways cannot be compelled by mandamus to rebuild or replace said bridge without the consent of the town board of said town having been given. The relief asked for in the writ was therefore denied. Upon this report a final order, which has been called a judgment, and which has been appealed from as a judgment, was entered, denying the relator's application for a writ of mandamus. From such final order the relator has appealed to this court.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Cadman & Peck (John Cadman, of counsel), for relator.
Rockefeller & Holsapple (J. Rider Cady, of counsel), for respondents.

SMITH, J. By section 10 of the highway law (chapter 568, p. 1179, of the Laws of 1890) it is provided that "if any highway or bridge shall at any time be damaged or destroyed by the elements or otherwise or become unsafe, the commissioner of highways of the town in which such highway or bridge may be, may cause the same to be immediately repaired or rebuilt if consented to by the town board." This provision of law was considered by this court in the case of Livingston v. Stafford, 99 App. Div. 108, 91 N. Y. Supp. 172, in which case this court held that this act was to enable the commissioner of highways to meet an emergency. At page 110, 99 App. Div., and page 174, 91 N. Y. Supp., Justice Houghton, writing for the court, says:

"Roads and bridges might be damaged or destroyed by flood and storm shortly after the holding of a town meeting, and the delay incident to a vote and the levying and collecting of a tax would put the inhabitants to great inconvenience. To relieve this, and to provide a means for quick restoration of the roadway, the law of 1858 was enacted, giving extraordinary powers to the highway commissioner and town board. That it was intended to give this extraordinary power to these officers of the town only in case of emergency is clearly evidenced by the language restricting the destruction or damage to a period after the town meeting should have been held, or when too late to give notice that an appropriation would be asked for."

The learned justice then proceeds to state that the present law gave no broader power, and that the statute as it now reads should be held to be a statute providing for an emergency where a bridge was destroyed by some extraordinary cause, and public convenience might call for its speedy replacement. Within the reasoning of this authority, if, after a bridge has been destroyed, its rebuilding has been delayed beyond the time when one or more town meetings have been held, there can no longer be found an emergency which would call for action upon the part of the highway commissioner without the direction of the town and a provision by the town meeting for funds for the rebuilding of the bridge. This bridge was destroyed in January, 1901. This application was not made until the summer or fall of 1903. There would seem to be no authority, therefore, in the highway commissioners, now to proceed under section 10 of the highway law, so called, for the rebuilding of this bridge.

If this court be wrong in the rule laid down in the case cited, nevertheless the town board is not called upon to act until a request has been made by the highway commissioner. Its powers are limited to those specifically granted by the statute. It does not represent the town in the execution of any general duty, if such there be, to keep the highway and bridges in repair. Their only authority in respect of the bridges is to consent or approve of some contract proposed to them by the highway commissioner in those cases in which the highway commissioner is authorized to act under section 10 of the highway law. Again, under this section the right given to

the highway commissioner upon the consent of the town board implies of necessity the right of the town board to withhold its consent. See People ex rel. Schwab v. Grant, 126 N. Y. 473, 27 N. E. 964. In that case, Ruger, C. J., in writing in an analogous case, says:

"A power to grant a privilege to one is inconsistent with the possession of the part of another of an absolute right to exercise such privilege. The requirement that a person must secure such leave from some one to entitle him to exercise a right carries with it by natural implication a discretion on the part of the other to refuse to grant it, if, in his judgment, it is improper or unwise to give the required consent."

If there be in the town board a right to refuse consent, the court clearly cannot, by mandamus, direct the discretion which it shall exercise. It seems clear, therefore, that the mandamus against the town board was properly refused.

We do not agree that the mandamus should be refused as against the highway commissioner either because too much was asked or because the town board was also included in the writ. People ex rel. Keene v. Supervisors, 142 N. Y. 271, 278, 36 N. E. 1062. We are, however, unable to find any clear specific duty in a highway commissioner to proceed to the rebuilding of the bridge without direction therefor and provision made by the town meeting for the cost thereof. It is true he has by statute a general supervision over the roads and bridges, and the general authority and duty to keep them in repair. That authority, however, and duty is limited by the funds which are provided for him by the town. In People ex rel. Bentley v. Commissioners of Highways of the City of Hudson, 7 Wend. 474, it was held that the commissioners of highways are not bound to build bridges when not in funds to defray the expenses. That was an application for a mandamus to compel the building of a bridge, in which case the mandamus was refused. In the case of People v. Adsit, 2 Hill, 619, it was held that an indictment against commissioners of highways for not repairing a bridge is defective unless it aver that the defendants had funds or other means to defray the expenses of repair. Cowen, J., in writing for the court, said:

"We are of opinion that the existence of funds or other specific means provided by statute is a condition precedent to the obligation of commissioners of highways to repair bridges."

Highway commissioners were formerly personally liable for failure to perform their duty in keeping the highways and bridges in repair. By a long line of decisions, however, this liability did not attach unless they were provided with funds with which such repairs could be made. There is, then, no clear specific duty in this highway commissioner to proceed and incur an expense of $600 for the rebuilding of this bridge. If he had such right or duty to repair those roads and to rebuild this bridge and pledge the credit of the town therefor, the relator might have the right to this writ. Without such duty imposed upon him by statute, it is difficult to

see how this court can, by its order, direct him to proceed to build said bridge.

If we are correct in these views, it follows that this final order must be affirmed. Final order affirmed, with costs. All concur.